**UNITED STATES of America ex rel. Walter JONES, Petitioner,**

**v.**

**Honorable Edward M. FAY, as Warden of Green Haven Prison, Stormville, New York, Respondent.**

United States District Court
S. D. New York.

Oct. 25, 1965.

Anthony F. Marra, New York City; Joshua N. Koplovitz, New York City, of counsel, for petitioner.

Louis J. Lefkowitz, Atty. Gen. of New York, Thomas F. O'Hare, Jr., Deputy Asst. Atty. Gen., of counsel, for respondent.

BONSAL, District Judge.

On May 2, 1938, after a jury trial, petitioner was convicted of robbery second degree, and on May 12, 1938, was sentenced to serve 15 to 30 years as a sec-

ond offender in the New York Court of General Sessions. On April 11, 1963 petitioner's motion for resentence was granted on the grounds that he was unable to perfect an appeal from his 1938 conviction because he was certified insane on May 17, 1938, five days after imposition of the original sentence. He was resentenced on April 11, 1963 to a term of 15 to 30 years *nunc pro tunc* as of May 12, 1938.

Petitioner appealed, and his conviction and resentence were affirmed without opinion by the Appellate Division, People v. Jones, 20 A.D.2d 758, 247 N.Y.S.2d 471 (1st Dept. 1964). On June 10, 1964, Judge Van Voorhis granted petitioner leave to appeal his conviction and resentence to the New York Court of Appeals. In his brief to the New York Court of Appeals, the District Attorney of New York County indicated that error had been committed in petitioner's 1938 trial by the admission into evidence of testimony that petitioner had pleaded guilty before a magistrate when he was not represented by counsel. On April 15, 1965 the Court of Appeals affirmed petitioner's conviction and resentence without opinion. People v. Jones, 15 N.Y.2d 978, 259 N.Y.S.2d 862, 207 N.E.2d 531 (1965).

On June 16, 1965, petitioner filed in this Court a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, seeking an order vacating and setting aside the judgment of conviction entered April 11, 1963, *nunc pro tunc* as of May 12, 1938. It appearing that petitioner was financially unable to obtain counsel, the Legal Aid Society of the City of New York was appointed as his counsel for the purposes of this proceeding. The Legal Aid Society served and filed its brief in support of petitioner's application on October 4, 1965, and the Attorney General of the State of New York served and filed his reply brief on October 15, 1965, and petitioner's counsel served and filed answering letters dated October 18, 1965 and October 21, 1965, and the Attorney General filed a letter of reply dated October 22, 1965.

The issues here involved are: (1) whether petitioner has exhausted his State remedies, and (2) if he has, whether White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) requires that the petition be granted.

The record in the State court proceeding shows that the robbery occurred on November 20, 1937 and that petitioner was arrested the same evening. The next day he was arraigned in the City Magistrate's Court, where he appeared without counsel and waived examination. The magistrate addressed the following question to the petitioner, to which he gave the following answer in the "Formal Examination" sheet which was signed by both the magistrate and the petitioner:

Question. "Give any explanation you may think proper of the circumstances appearing in the testimony against you, and state any facts which you think will tend to your exculpation."

Answer. "I am guilty."

Petitioner was indicted between the arraignment and the trial. At the trial, the People's case rested on the testimony of three witnesses: the complainant, Weinper, the arresting officer, Barts, and a witness, Sparrow. Weinper testified that he was present at the arraignment and that the charge was read to the petitioner and that he pleaded guilty, stating, "I did it." Barts testified, "the court officer read the charge and asked the [petitioner] did he understand the charge against him and he said 'Yes.' He asked him how did he plead: guilty or not guilty, and he said 'Guilty.'"

Petitioner contends that he raised the same issue here involved in his appeal to the Appellate Division, First Department, and to the Court of Appeals, namely, that the use at the trial of petitioner's plea of guilty before the magistrate, made in the absence of counsel, required reversal of his conviction.

The Attorney General, on the other hand, contends that the issue of whether he was fully advised of his right to counsel at the time of the arraignment was not before the State courts and that this issue should first be litigated in a *coram nobis* proceeding in the State court.

An examination of the record discloses that in the State court proceedings petitioner did raise the issue that the admission at the trial of his plea of guilty before the magistrate was in violation of both his State and Federal constitutional rights. But the Attorney General contends that there is a presumption of regularity as to the proceedings before the magistrate, so that, in absence of evidence to the contrary, it must be presumed that the magistrate informed the petitioner of his right to counsel. One of the "form sheets" which was signed by the magistrate at the time of petitioner's arraignment on November 21, 1937 leaves blank the space to be filled in with the name of the attorney for the petitioner. (The complaint shows that a notice of appearance on behalf of petitioner was filed by Edward T. Tighe on November 29, 1937, some eight days after the arraignment.)

On the record, it seems clear that petitioner did not have an attorney present at the time of the arraignment. The form sheet includes the statement, "You have the right to the aid of counsel in every stage of the proceedings, and before any further proceedings are had." and the question, "Do you require counsel? If you do, you will be allowed a reasonable time to send for him, and the examination will be adjourned for that purpose." No answer to this question appears.

■■ A similar statement and question, even if answered, has been held by the Court of Appeals of New York to insufficiently advise the defendant of his right to counsel so as to support a subsequent waiver. People v. Witenski, 15 N.Y.2d 392, 259 N.Y.S.2d 413 (1965). As the court pointed out, the statement in the form sheet lacks any reference to the *right* of the defendant to *assigned* counsel, and "this, for defendants without money, is the important right." The Witenski opinion was founded on New York constitutional law, but its reasoning would be equally valid under 14th Amendment "due process" concepts and under the wording of the 6th Amendment. As the Supreme Court in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), broadly stated: "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights * * *." With the recognition of the right to counsel as an essential requirement of due process, Witenski states a sound principle of constitutional law, both State and Federal.

It is true that in Witenski the defendants were 17-year-old boys being charged as first offenders, whereas petitioner was over 30 years old at the time of his arraignment and was being charged as a second offender. On the other hand, the record amply demonstrates the ignorance and ineptness of petitioner, both in the robbery and in the subsequent proceedings. The circumstances brought out in the record show that the robbery took place on the evening of November 20, and that the store manager, who was a witness, pursued him and notified the arresting officer, who apprehended and arrested petitioner in an areaway near the scene of the robbery after 11 p. m. The loot, consisting of dollar bills ($9 in all) was found by the arresting officer near the place where petitioner was arrested. He was arraigned the following morning before the magistrate, where he pleaded guilty to the charge. The petitioner was committed as insane less than six months after the arraignment took place. Apart from the inadequacy of notice to petitioner of his right to counsel, there is nothing in the record showing that petitioner made an intelligent waiver of his right to counsel. Nor could the holding of an evidentiary hearing 28 years later supply any credible evidence in this regard.

■ The court concludes that petitioner was not informed of his *right* to

assigned counsel notwithstanding his inability to afford counsel, and that the record of the arraignment demonstrates that he did not intelligently waive his right to counsel. While this issue could have been more clearly pinpointed in the State court proceedings, there is no doubt that it was raised and that the record of what took place at the arraignment was before the State courts. Moreover, the availability to petitioner of the remedy of *coram nobis* in the State courts appears foreclosed by the ruling of the New York Court of Appeals in People v. Howard, 12 N.Y.2d 65, 236 N.Y.S.2d 39, 187 N.E.2d 113 (1962) since petitioner's attorney at the 1938 trial did not object to the testimony of Weinper and Barts with respect to petitioner's plea of guilty before the magistrate. Nor does it appear that the petitioner has deliberately bypassed the State courts in the presentation of his present claim. Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). On the contrary, he moved for resentence and took his appeals to the highest State court. Accordingly, the court finds that petitioner has exhausted his State remedies.*

 While it is true, as contended by the Attorney General, that the arraignment itself was not a critical stage in the proceedings when it occurred, it is clear that it became so when his plea or admission of guilt was introduced into evidence at petitioner's trial through the testimony of Weinper and Barts. Accordingly, petitioner's federally protected constitutional right to counsel was denied him when he was called upon to plead before the magistrate at a time when he did not have counsel and had not intelligently waived counsel. White v. State of Maryland, supra.

The Attorney General urges that even if White v. State of Maryland applies, it should not be applied retroactively. See Linkletter v. Walker, 381 U.S. 618, 85 S. Ct. 1731, 14 L.Ed.2d 601 (1965) (where the Supreme Court held that Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed.2d 1081 (1961) would not be applied retroactively). However, in Linkletter, the Supreme Court distinguished the considerations to be applied in cases of confessions and those to be applied in search and seizure cases, such as Mapp, stating, "There is no likelihood of unreliability or coercion present in a search and seizure case." But here we are dealing with the fundamental right to counsel as laid down by the Supreme Court in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). As stated by the Supreme Court in Linkletter, 381 U. S., at p. 639, 85 S.Ct. at p. 1743, footnote 20, "In Gideon v. Wainwright, supra, we recognized the fundamental fact that a layman, no matter how intelligent, could not possibly further his claims of innocence, and violation of previously declared rights adequately. Because of this the judgment lacked reliability."

 While the record here does not leave much doubt as to the guilt of the petitioner of the offense charged, it does reveal that he was not adequately informed of his right to assigned counsel at a critical stage in the proceedings. Accordingly, on the authority of White v. State of Maryland, supra, the within petition for a writ of habeas corpus is granted, and petitioner ordered discharged from custody under the present judgment of conviction, but opportunity will be afforded to either appeal from this grant of the writ or to retry petitioner if that procedure is deemed advisable. Execution of the writ will, therefore, be stayed for a period of thirty (30) days. At the

---

\* Prior to his resentencing in 1963 and prior to the decision in White v. State of Maryland, supra, petitioner sought *coram nobis* relief in 1950, which was denied, appeal dismissed by Appellate Division in 1953; again in 1960 on substantially the same issue raised in this petition, which

was denied and denial affirmed by Appellate Division in 1962; again in 1961, which was denied; again in 1962, which was denied; and again in February 1963, no disposition shown, perhaps in view of the resentencing of petitioner in April, 1963.

end of that period of time, if there has neither been an appeal taken from this ruling nor an initiation of proceedings looking to a retrial, the writ will be executed and the petitioner released.

It is so ordered.