OPINION OF THE COURT
Murray Koenig J.
Defendant William Bye moves, pursuant to CPL 440.10, to vacate a judgment of conviction rendered against him on July 3, 1973.
On April 26, 1973, defendant was arrested and charged with violating section 120.15 (menacing, a class B misdemeanor) and subdivision 9 of section 265.05 (now Penal Law, § 265.01, subd [2], possession of a dangerous instrument, a class A misdemeanor) of the Penal Law.
After Mr. Bye was arraigned in the Bronx Criminal Court, the matter was adjourned for a preliminary hearing which occurred in Part 1-G of this court on May 17, 1973. The court found that there was reasonable cause to believe that the crimes charged were committed by the defendant and the matter was adjourned for trial on June 19, 1973. On June 19, 1973, the matter was once again adjourned for trial in Part 1-G for July 2, 1973.
On July 2, 1973, a one Judge trial was conducted before Judge Jerome Vale, and at the close of all the evidence and summations, Judge Vale reserved his decision until July 3, 1973.
On July 3, 1973, Judge Vale rendered a verdict of guilty on all counts, and defendant was sentenced to a conditional discharge. That sentence was changed on October 9, 1973 to an unconditional discharge.
The defendant never filed a notice of appeal subsequent to his resentencing on October 9, 1973, and his former counsel’s attempts to obtain leave of the Appellate Term to extend the time within which to file the notice of appeal and perfect the appeal were denied.
Now, five years after his conviction, defendant claims that his constitutional right to a jury trial was denied him and that this procedural infirmity mandates that his conviction be set aside under either CPL 440.10 (subd 1, pars [a] or [h]) which provide as follows:
"§ 440.10 Motion to vacate judgment.
*1033 "1. At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that:
"(a) The court did not have jurisdiction of the action or of the person of the defendant; or
* * *
"(h) The judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States.”
There is no doubt that defendant was entitled to a jury trial in 1973. One of the charges against him, the weapons charge, was a class A misdemeanor and carried a potential penalty in excess of six months. The statutory right to a jury trial in these circumstances stems from CPL 340.40, which became effective in September, 1971, two years before defendant’s conviction:
"§ 340.40 Modes of Trial.
* * *
"2. In any local criminal court a defendant who has entered a plea of not guilty to an information which charges a misdemeanor must be accorded a jury trial, conducted pursuant to article three hundred sixty, except that in the New York city criminal court the trial of an information which charges a misdemeanor for which the authorized term of imprisonment is not more than six months must be a single judge trial. The defendant may at any time before trial waive a jury trial in the manner prescribed in subdivision two of section 320.10, and consent to a single judge trial.”
Defendant’s right to a jury trial is constitutionally, as well as statutorily, guaranteed. In Duncan v Louisiana (391 US 145) the Supreme Court held that there is a fundamental right to a jury trial for "serious offenses”, a deprivation of which constitutes a violation of due process. A "serious offense” was later defined as an offense carrying a potential prison sentence of more than six months (Baldwin v New York, 399 US 66).
Defendant’s right to a jury trial was subject to divestiture by an affirmative waiver only. The New York State Constitution requires that the waiver be a "written instrument signed by defendant in person in open court before and with the approval of a judge * * * having jurisdiction to try the offense”. (NY Const, art I, § 2.) This requirement has been in *1034 existence since 1938. CPL 320.10 (subd 2) contains a similar requirement.
For some reason not readily apparent, defendant was never asked to execute such a waiver at any time and never did execute one. None of defendant’s prior attorneys advised him that his failure to affirmatively waive his right to a jury trial tainted his conviction and, as no appeal was taken in this or in any other jurisdiction, this has been defendant’s first opportunity to test that conviction.
Despite the egregious nature of the procedural defect, I think that both the case law and CPL 440.10 preclude this court from vacating defendant’s conviction. As a preliminary matter I do not find any merit to defendant’s contention that the trial court did not have jurisdiction over him. It is uncontroverted that the adjudication of defendant’s guilt was procedurally defective, but a procedural defect does not automatically destroy either subject matter or personal jurisdiction if they exist in the first instance. Whether or not the trial court properly adjudicated the matter before it, it still had subject matter jurisdiction over the crime (CPL 10.30) and jurisdiction over defendant’s person by nature of his presence. (See, e.g., People v Pagan, 84 Misc 2d 565.) There was, then, no lack of jurisdiction in the true sense of the word.
But, as is evident from the analysis above, the defect in question is violative of both State and Federal constitutional law. For this reason this court would be justified in vacating defendant’s conviction under CPL 440.10 (subd 1, par [h]) were this the sole applicable subdivision. Subdivision 2 severely limits the availability of the remedy, however, by precluding a court from vacating a judgment of conviction if sufficient facts appear on the record: "2. Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when * * * (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant’s unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him”.
The requirement that, for a motion under CPL 440.10 to be granted, the defect not appear on the face of the record, stems *1035 from the common law. The statute itself has its origin in the English common-law writ of coram nobis which was revivified in New York by Matter of Lyons v Goldstein (290 NY 19, 25-27). The writ was re-established to attack judgments which have been fraudulently obtained (Matter of Lyons v Goldstein, supra; Matter of Morhous v New York Supreme Ct., 293 NY 131) because, in these cases there exist "the abrogation— without adequate remedy — of fundamental precepts going either to the jurisdiction of the court or resulting in the perpetration of fraud upon the court” People v Sadness, 300 NY 69, 73-74).
Be that as it may, it has always been clear that only errors which do not appear on the record give rise to coram nobis. The rationale for that rule is that errors apparent on the face of the record are easily reviewable upon appeal, and as long as defendant has appealed or has ever had the opportunity to appeal, the law has afforded him adequate recourse.
There must be an end to litigation eventually, after all (People v Howard, 12 NY2d 65, cert den 374 US 840). Coram nobis does not serve as a vehicle for an additional appeal (People v Shapiro, 3NY2d 203 [testimony read to the jury outside the defendant’s presence]) and even if defendant took no appeal, but it was possible for him to do so at one time, the writ is not available to him. (People v Hayden, 68 Misc 2d 1022; People v Brown, 13 NY2d 201 [person mistakenly sentenced under old instead of revised Penal Law].) It is only when appeal was foreclosed because no appealable issue was apparent from the record that collateral attack on a judgment will be allowed.
It is important to emphasize that this principle generally holds true even though the defect involves a violation of constitutional right, including the right to a jury trial. In People v Kenneth A. (36 AD2d 859), defendant, in order to obtain youthful offender treatment, was compelled to waive his right to a jury trial (under Code Grim Pro, § 913-g) and was subsequently convicted. Defendant appealed his conviction, and while appeal was pending section 913-g of the Code of Criminal Procedure was declared unconstitutional. Defendant did not raise the issue of the constitutionality of his conviction upon appeal, and his conviction was affirmed. Three months later he instituted a coram nobis proceeding raising those grounds. The Second Department held that the trial court could not vacate the convictions (People v Kenneth A., *1036 supra, p 860): "The fact that defendant had waived a jury trial to qualify for youthful offender treatment was apparent on the face of the record. The fact that such waiver could not constitutionally be compelled had already been established before defendant executed it and before he was tried without a jury. The fact that section 913-g of the Code of Criminal Procedure was unconstitutional in this respect had already been established before defendant’s appeal from the judgment was submitted to this court. Yet, neither at his trial nor on his appeal from the judgment did he contend he had been denied his right to a jury trial. To permit him to raise that issue for the first time by a coram nobis application made only three months after he had failed to raise it on his appeal from the judgment (despite the fact that it was then available) would enlarge the extraordinary remedy of coram nobis out of all reason and would drastically alter its historic function of supplying a remedy for a grievous wrong when no other avenue of relief was open.”
People v Kenneth A.(supra) is not an anomolous case; it is just one of many which deny a right to collateral attack if there was ever an opportunity to cure the defect in question on appeal, be the defect of a constitutional nature or not. Whether the defendant was denied an opportunity to confront a witness (People v Kendricks, 300 NY 544) or was convicted on the strength of an involuntary confession (People v Noia, 3 NY2d 596) or was subject to an unreasonable search and seizure (People v Eastman, 33 Misc 2d 583, affd 18 AD2d 1102) coram nobis will not lie if the issue was ever appealable. The rule seems harsh, but the courts have held that "the mere neglect of counsel to take an appeal, excusable or not, should not open the door to the bringing of collateral attack * * * in a case where it would not otherwise lie”. (Hodges v United States, 282 F2d 858; People v Coe, 36 Misc 2d 181; see, also, Dennis v United States, 177 F2d 195; United States v Peabody, 173 F Supp 413, 415.) "[CJoram nobis requires, in addition to the assertion of fundamental constitutional right, that the opportunity to assert the same has been substantially impaired or denied”. (People v Bennett, 30 NY2d 283, 288; People v Howard, 12 NY2d 65, supra.) Recent cases have affirmed these principles.[1]
From this analysis flows the only major exception to the *1037 rule that constitutional defects on the record may not be collaterally attacked. A conviction involving interference with the right to counsel, whether off the record or on, constitutes a denial of due process which may be attacked collaterally (People v Silverman, 3 NY2d 200; Matter of Bojinoff v People, 299 NY 145). The reason for this exception is that interference with the right to counsel may preclude the possibility of appeal (People v Howard, 12 NY2d 65, supra).
However, the instant case does not fall under the deprivation of right to counsel exception, now embodied in CPL 440.10 (subd 3, par [a]).
Is it possible, then to view the defect in the instant case as a defect not on the face of the record? I do not think so.
It is apparent that the procedural defect in the instant case can be viewed as an omission of necessary procedure; that is, the court neglected to ask defendant to make a formal waiver of his right to a jury trial. A case which closely resembles the instant case (although it lacks its constitutional dimension) is People v Sullivan (3 NY2d 196). Sullivan too involves an omission of necessary procedure. Defendant should have been but was not asked in Sullivan whether he had any legal cause to show why judgment should not have been rendered against him, as required at that time by section 480 of the Code of Criminal Procedure. The Court of Appeals found this omission to be an error of law apparent on the face of the record [2] and held that coram nobis did not lie for that reason.
Thus, given the limitations of CPL 440.10 (subd 2, par [c]) and the clear direction of the case law, it is evident that though defendant’s rights were violated in 1973, his opportunity to assert these rights was never substantially impaired. (People v Howard, 12 NY2d 65, cert den 374 US 840, supra.) Defendant unjustifiably failed to appeal his lack of a jury trial and he is foreclosed from collaterally attacking it now.
Accordingly, defendant’s motion to vacate his judgment of conviction is denied.

. In People v Garcia (399 NYS2d 117), defendant claimed he was suffering from mental defect when he pleaded guilty. (He had been shot in the head.) Motion under CPL 440.10 denied under CPL 440.10 (subd 2, par [c]); defendant could have raised the *1037 point on appeal. (See, also, People v Croce, NYLJ, July 19, 1978, p 10, col 4.) Defendant claimed he was inadequately represented by counsel. Motion under CPL 440.10 denied for the same reason.

. Strictly speaking at common law the instant omission would not qualify for another reason; it is an error of law. Errors of law were not reviewable collaterally. CPL 440.10 is silent on this requirement. Presumably it no longer exists. (But, see, Matter of Hogan v Court of General Sessions, 296 NY 1, a pre-CPL case which holds that despite codification, coram nobis is governed by the common law.)